UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEAN RILEY,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>RADIUS HEALTH, INC., G. KELLY MARTIN, OWEN HUGHES, WILLARD H. DERE, CATHERINE J. FRIEDMAN, JEAN-PIERRE GARNIER, JENNIFER ANN JARRETT, SEAN MURPHY, MACHELLE SANDERS, SUSAN VISSERS LISA, and ANDREW C. VON ESCHENBACH,<br><br>　　　　　　Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Sean Riley ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.  Plaintiff brings this action against Radius Health, Inc. ("Radius Health" or the "Company") and Radius Health's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9, arising out of the Board's attempt to sell the Company to Gurnet Point Capital, LLC ("Gurnet Point") and Patient Square Capital ("Patient Square") through Ginger Acquisition Inc., a corporation jointly owned by Gurnet Point and Patient Square, and its wholly owned subsidiary, Ginger Merger Sub, Inc. (collectively "Buyers").

1

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading solicitation statement to be filed with the Securities and Exchange Commission ("SEC") on July 12, 2022, with amendments filed on July 21, 2022 and July 26, 2022 (collectively the "14D-9"). The 14D-9 recommends that Radius Health stockholders tender their shares in favor of a proposed transaction (the "Proposed Transaction") whereby Radius Health is acquired by Buyers. The Proposed Transaction was first disclosed on June 23, 2022, when Radius Health announced that it had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Buyers will acquire all of the outstanding shares of common stock of Radius Health for $10.00 in cash and one contingent value right ("CVR") of $1.00 upon the achievement of a specified milestone per share of Radius common stock (the "Merger Consideration"). The deal is valued at approximately $890 million and is expected to close in the third quarter of 2022.

3. The 14D-9 is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 contains materially incomplete and misleading information concerning the financial projections prepared by Radius Health management, the financial analyses conducted by J.P. Morgan Securities LLC ("J.P. Morgan"), Radius Health's financial advisor, as well as potential conflicts of interest faced by the Company's insiders.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any further amendments to the 14D-9, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Radius Health's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced

below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Radius Health.

6. Defendant Radius Health is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 22 Boston Wharf Road, 7th Floor, Boston, Massachusetts 02210. Radius Health common stock trades on the Nasdaq Global Market under the ticker symbol "RDUS."

7. Defendant G. Kelly Martin has been President, Chief Executive Officer and a director of the Company since 2020.

8. Defendant Owen Hughes has been a director of the Company since 2013 and serves as Chairman of the Board.

9. Defendant Willard H. Dere has been a director of the Company since 2014.

10. Defendant Catherine J. Friedman has been a director of the Company since 2015.

11. Defendant Jean-Pierre Garnier has been a director of the Company since 2015.

12. Defendant Jennifer Ann Jarrett has been a director of the Company since May 2022.

13. Defendant Sean Murphy has been a director of the Company since 2020.

14. Defendant Machelle Sanders has been a director of the Company since 2021.

15. Defendant Susan Vissers Lisa has been a director of the Company since May 2022.

16. Defendant Andrew C. von Eschenbach has been a director of the Company since 2021.

17. Nonparty Gurnet Point is a healthcare fund with principal executive offices at 55

Cambridge Parkway, Suite 401, Cambridge, MA 02142.

18. Nonparty Patient Square is a healthcare investment firm with principal executive offices at 2884 Sand Hill Road, Suite 100, Menlo Park, CA 94025.

19. Nonparty Ginger Acquisition, Inc. is a Delaware a corporation jointly owned by Gurnet Point and Patient Square.

20. Nonparty Ginger Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Ginger Acquisition, Inc.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

22. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and the Proposed Transaction**

24. Radius Health is a global biopharmaceutical company focused on the areas of bone health, neuroscience, and oncology. Radius Health's lead product, TYMLOS (abaloparatide) injection, was approved in 2017 by the U.S. Food and Drug Administration for the treatment of

postmenopausal women with osteoporosis at high risk for fracture. In 2021, the Company completed Phase 3 clinical trials of: a subcutaneous abaloparatide injection for potential use in the treatment of men with osteoporosis; elacestrant, for potential use in the treatment of ER+/HER2- advanced or metastatic breast cancer; and a transdermal delivery system for abaloparatide. Radius Health is also developing a synthetic cannabidiol oral solution that is entering a Phase 2/3 study for treatment of hyperphagia-related behavior in patients with Prader-Willi syndrome. The Company brought in $229.9 million in revenues in 2021 based on sales of TYMLOS and licensing revenue.

25. On June 23, 2022, the Company entered into the Merger Agreement with Buyers. According to the press release issued that day announcing the Proposed Transaction:

**Radius Health Announces Agreement to be Acquired by
Gurnet Point Capital and Patient Square Capital**

- Transaction delivers immediate value and liquidity to Radius shareholders

- Result of nine-month strategic review process by the Radius Board to maximize shareholder value

- Potential per share value of $11.00, including $10.00 cash paid at closing and potential $1.00 CVR

- Represents total transaction consideration of up to approximately $890 million

**BOSTON and Cambridge, MA – June 23, 2022** – Radius Health, Inc. ("Radius" or the "Company") (Nasdaq: RDUS) today announced that it has entered into a definitive agreement to be acquired by Gurnet Point Capital ("Gurnet Point") and Patient Square Capital ("Patient Square") in a transaction valued at approximately $890 million, including the assumption of debt and assuming full payment of the CVR (Contingent Value Right). Debt financing for this transaction will be provided by OrbiMed Advisors, LLC.

Under the terms of the merger agreement, an entity jointly owned by Gurnet Point and Patient Square will initiate a tender offer to acquire all of the outstanding shares of Radius for $10.00 per share in cash plus a CVR of $1.00 per share payable upon TYMLOS® (abaloparatide) net sales reaching $300 million (inclusive of U.S. sales

and Japan royalties or supply payments based on supply of TYMLOS for sale in Japan) during any consecutive 12-month period prior to December 31, 2025.

Including the CVR payment, Radius shareholders will receive up to an aggregate of $547 million in cash. The upfront payment at closing represents a premium of 45% over the 30-day volume-weighted average price (VWAP) of Radius's common stock, and inclusive of the CVR payment, a 59% premium.

"The acquisition of Radius by Gurnet Point and Patient Square provides our shareholders with attractive, immediate value at a compelling premium, in addition to the potential future upside of TYMLOS through the CVR," said Owen Hughes, Chairman of Radius Health. "Today's announcement of the acquisition, which has been unanimously approved by the Radius Board, is the culmination of a thorough and rigorous strategic review process conducted over nine months by the Board and management with the assistance of external advisors. The extensive review included outreach to and interaction with multiple strategic parties and financial sponsors on all parts of our business. We are confident that this transaction maximizes value for shareholders and provides the clearest path forward for Radius."

*Kelly Martin, Chief Executive Officer of Radius*, said, "This transaction provides shareholders with immediate value in addition to the potential future upside from the CVR. Over the past two years we have worked tirelessly to improve the business fundamentals of Radius. We are proud of what Radius and its dedicated employees have achieved to date."

*Travis Wilson, Partner at Gurnet Point*, said, "We are delighted to be acquiring Radius and providing additional resources to the Company during this critical time. We fully believe in the value of the Company's portfolio and are looking forward to working closely with the Company to deliver a positive impact for patients."

*Jim Momtazee, Managing Partner at Patient Square Capital*, stated, "Our investment approach is centered on backing businesses that improve patient lives and consistent with that we are excited to work with Radius to expand access to an important therapeutic."

**Tender Offer and Transaction Details**

Under the terms of the merger agreement, an entity jointly owned by Gurnet Point and Patient Square will promptly commence a tender offer for all outstanding shares of Radius common stock at a price of $10.00 per share in cash plus a CVR of $1.00 per share that is payable upon TYMLOS® (abaloparatide) net sales reaching $300 million (inclusive of U.S. sales and Japan royalties or supply payments based on supply of TYMLOS for sale in Japan) during any consecutive 12-month period prior to December 31, 2025. Radius' Board of directors unanimously recommends that Radius shareholders tender their shares in the tender

offer. Upon the successful completion of the tender offer, the acquisition subsidiary will be merged into Radius, and any remaining shares of common stock of Radius that were not tendered in the tender offer will be canceled and converted into the right to receive the same consideration payable in the tender offer.

The transaction, which has been unanimously approved by the members of the Radius Board, is expected to close in the third quarter of 2022, subject to customary closing conditions, including Radius shareholders tendering a minimum number of shares and receipt of regulatory approvals. The transaction is not subject to a financing condition.

### B. The Materially Incomplete and Misleading 14D-9

26. On July 13, 2022, Defendants filed the initial 14D-9 with the SEC. The purpose of the 14D-9 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether or not to tender his shares in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

27. The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading. The 14D-9 indicates that in connection with the rendering of J.P. Morgan's fairness opinion, J.P. Morgan "reviewed certain internal financial analyses and forecasts prepared by the management of the Company relating to its business." Accordingly, the 14D-9 should have, but failed to, provide certain information in the projections that Radius Health's management provided to the Board and J.P. Morgan.

28. Notably, the 14D-9 fails to disclose the line-item entries forming the basis of the Company's forecasted unlevered free cash flows with respect to the "February Wholeco Projections" and "June Wholeco Projections."

29. This omitted information is necessary for Plaintiff to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning J.P. Morgan's Financial Analyses*

30. With respect to the *Discounted Cash Flow Analysis,* the 14D-9 fails to disclose the key data, inputs, and assumptions forming the basis of the range of discount rates applied by J.P. Morgan. The 14D-9 also fails to disclose the following figures as of June 21, 2022: (a) the Company's proceeds of its option exercise; (b) the Company's restricted stock units outstanding; (c) the Company's performance restricted stock units; and (d) the Company's performance stock units. Additionally, the 14D-9 fails to disclose the impact of the Company's net operating losses.

31. With respect to the *Public Trading Multiples Analysis*, the 14D-9 fails to disclose the objective selection criteria, as well as the specific financial multiples and metrics analyzed.

32. With respect to the *Selected Transactions Analysis,* the 14D-9 fails to disclose the objective selection criteria for each transaction, as well as the specific financial multiples and metrics for each transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Potential Conflicts of Interest by Company Insiders*

33. The 14D-9 also fails to disclose material information concerning potential conflicts of interest involving Radius Health insiders. Specifically, the 14D-9 fails to disclose if anyone from Company management obtained any employment with or was retained by the surviving company. The 14D-9 fails to disclose the specifics of any communications or negotiations between Company executives and the Buyers concerning such employment and/or retention, including the content, time, manner, and participants of any such discussions.

34. The 14D-9 also fails to disclose whether any of the Buyers' proposals or indications of interest contained discussions concerning management employment or retention in the surviving

company following the closing of the Proposed Transaction or their purchase of or participation in the equity of the combined company

35. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

36. In addition, the Individual Defendants knew or recklessly disregarded that the 14D-9 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

37. Specifically, the Individual Defendants undoubtedly reviewed the contents of the 14D-9 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the 14D-9 omits the material information referenced above and contains the incomplete and misleading information referenced above.

38. Further, the 14D-9 indicates that on June 22, 2022, J.P. Morgan reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated June 23, 2022, to the effect that the Merger Consideration was fair, from a financial point of view to Radius Health stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning J.P. Morgan's financial analyses which has been omitted from the 14D-9, and thus knew or should have known that such information has been omitted.

39.     Plaintiff is immediately threatened by the wrongs complained of herein and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**All Defendants for Violations of Section 14(e) of the Exchange Act and Rule 14d-9**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Defendants have filed the 14D-9 with the SEC with the intention of soliciting Radius Health stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the 14D-9, which fails to provide the material information referenced above.

42.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Radius Health, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

43.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. . . ." 15 U.S.C. § 78n(e).

44.     Specifically, and as detailed above, the 14D-9 violates Section 14(e) and Rule 14d-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Radius Health shares and the financial analyses performed by J.P. Morgan in support of its

fairness opinion; and (iii) potential conflicts of interest involving Company insiders.

45. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the 14D-9 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14D-9 states that J.P. Morgan reviewed and discussed its financial analyses with the Board during various meetings including on June 22, 2022, and further states that the Board considered J.P. Morgan's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the 14D-9, rendering the sections of the 14D-9 identified above to be materially incomplete and misleading.

46. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, who will be deprived of his right to make an informed decision whether to tender his shares if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Radius Health within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Radius Health and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to the time the 14D-9 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the 14D-9.

51. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any other amendments to the 14D-9 with the SEC unless and until Defendants agree to include the material information identified above in any such amendment;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the 14D-9;

C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  F. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 26, 2022          **ROWLEY LAW PLLC**

                    *S/ Shane T. Rowley*
                    Shane T. Rowley (SR-0740)
                    Danielle Rowland Lindahl
                    50 Main Street, Suite 1000
                    White Plains, NY 10606
                    Tel: (914) 400-1920
                    Fax: (914) 301-3514
                    Email: srowley@rowleylawpllc.com
                    Email: drl@rowleylawpllc.com

                    *Attorneys for Plaintiff*